**BLACKFORD COUNTY SCHOOLS,**
Appellant (Plaintiff Below),

v.

**INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD, Raymond L. Green, Cleon F. Foust, Jr., Suzanne F. Trautman: in their official capacities as members of the Indiana Education Employment Relations Board and the Blackford County Teachers Association, Appellees (Defendants Below).**

No. 29A02–8608–CV–273.

Court of Appeals of Indiana,
Second District.

Feb. 15, 1988.

Robert W. Rund, Abbott Rund Small & Goerges, Indianapolis, for appellant.

Janet C. Knapp, Richard J. Darko, Tabbert, Cremer & Capehart, Indianapolis, for appellees.

SHIELDS, Presiding Judge.

Blackford County Schools (Blackford) appeals a summary judgment entered in favor of the Indiana Education Employment Relations Board (IEERB); Raymond L. Green, Cleon F. Foust, Jr. and Suzanne F. Trautman in their official capacities as members of the IEERB; and the intervenor, Blackford County Teachers Association (Association).

The Indiana Educational Employment Relations Board is an administrative agency of the State of Indiana established by Section 9 of the Indiana Certificated Educational Employee Bargaining Act (Act).[1] Blackford is a public school corporation operating elementary and secondary schools in Blackford County and is a "school employer" as that term is defined by Section 2(c) of the Act.[2] Association is the "exclusive representative" of the school employees of Blackford as that term is defined by Section 2(l) of the Act.[3] Blackford sought a declaratory judgment and permanent injunction to prevent an alleg-

1. IC 20–7.5–1–1 et seq. (Burns 1985).

2. IC 20–7.5–1–2(c).

3. IC 20–7.5–1–2(1).

4. Blackford and Association resolved their bargaining impasse and entered into a new collec-

edly illegal fact-finding procedure from occurring during teacher collective bargaining. More specifically, Blackford sought to enjoin IEERB fact-finders from hearing evidence on subjects statutorily excluded from the fact-finding procedure upon the objection of the school employer.

The trial court granted the Association's motion for summary judgment on two theories—lack of subject matter jurisdiction and mootness. First, the trial court found that Blackford had "failed to invoke the subject matter jurisdiction of this Court over the issuance [sic] of an advisory opinion issued by IEERB or its fact-finder pursuant to I.C. 20–7.5–1–13." Record at 322. Second, the trial court found the case to be moot because: (1) a contract was signed prior to the fact-finding hearing in question,[4] (2) all prior school years had passed with a contract signed, and (3) Blackford could have availed itself of an administrative remedy, namely, to refuse to engage in fact-finding and thus subject itself to an unfair labor practice charge filed by BCTA wherein all jurisdictional issues could be resolved.

### ISSUE

Did the trial court err in denying Blackford declaratory and injunctive relief.

We affirm.

### BACKGROUND

Collective bargaining between school employers and their "certificated" employees is the subject of Indiana's Certificated Educational Employee Bargaining Act. The purposes of the Act include promoting harmony between school employers and their employees and preventing "material interference with the normal public school educational process." IC 20–7.5–1–1. Accordingly, the Act prohibits teacher strikes, IC 20–7.5–1–14, and replaces the strike weap-

tive bargaining agreement for the 1984–86 school years before the scheduled fact-finding hearing was held. Nevertheless, Blackford seeks a declaratory judgment and permanent injunction to limit the role of the fact-finder in future contract negotiations.

on with a system intended to ensure fair collective bargaining, respecting the rights of both school employers and employees to have their disputes aired and negotiated.

Under this scheme, a school employer is required to bargain in good faith with the school employee association's exclusive representative regarding certain "mandatory" subjects. IC 20–7.5–1–2(n). The exclusive list of mandatory subjects (Section 4) are: "salary, wages, hours, and salary and wage-related fringe benefits," (IC 20–7.5–1–4) and obligations contained in contracts negotiated within the year preceeding adoption of the Act; so-called "grandfathered" items. IC 20–7.5–1–5. The school employer must "discuss," but is not required to bargain collectively, on certain "non-mandatory" (or "permissive") subjects (Section 5), namely:

> working conditions, other than those provided in Section 4[20–7.5–1–4]; curriculum development and revision; textbook selection; teaching methods; selection, assignment or promotion of personnel; student discipline; expulsion or supervision of students; pupil-teacher ratio; class size or budget appropriations: Provided, however, that any items included in the 1972–1973 agreements between any employer school corporation and the employee organization shall continue to be bargainable.

The duty to bargain in good faith does not require either party "to agree to a proposal of the other or to make a concession to the other." IC 20–7.5–1–2(n). Thus, if collective bargaining has become futile, either party may declare that an "impasse" has been reached. IC 20–7.5–1–12(b). An impasse may arise over either the substance or scope of the bargainable Section 4 subjects. Impasse could be reached regarding the "scope" of bargaining if, for example, the employer claims that the association is demanding bargaining, rather than discussion, of Section 5 subjects. Although school employers are obligated to "discuss" Section 5 items, they are *not* obligated to "be subject to or enter into impasse procedures" regarding these items. IC 20–7.5–1–5.

If an impasse is declared, the IEERB is required to appoint a mediator.[5] IC 20–7.5–1–12(b). The mediator holds confidential sessions with the parties "to delineate the problems in bargaining collectively, finding solutions which can reasonably be accepted by both parties and to determine common grounds, if any." IC 20–7.5–1–13(a). If the informal mediation process fails to result in agreement between the parties within a specified time [forty-five (45) days prior to the submission date] IEERB is required to initiate "fact-finding." IC 20–7.5–1–12(d). "The purpose of fact-finding is to give a neutral advisory opinion where the parties are unable by themselves, or through a mediator, to resolve a dispute." IC 20–7.5–1–13(b). A more formalized procedure is involved in fact-finding. The fact-finder:

> shall make such investigation and hold such hearings as he deems necessary in connection with any dispute, may restrict his findings to those issues which he determines significant, may use evidence furnished him by the parties, by the board, its staff, or any other state agency. The fact-finder shall make a recommendation as to the settlement of the disputes over which he has jurisdiction. In conducting such hearings and investigations, he shall not be bound by the provisions of IC 1971, 4–22–1; he shall, however, take into consideration the following factors:
>
> (1) Past memoranda of agreements and/or contracts between the parties;
>
> (2) Comparisons of wages and hours of the employees involved, with wages of other employees working for other public agencies and private concerns doing comparable work, giving consideration to factors peculiar to the school corporation;
>
> (3) The public interest;

**5.** Alternatively, IEERB must initiate mediation if an agreement on the Section 4 items is not reached seventy-five (75) days prior to the first date for legal notice and publication of the school employer budget (submission date).

(4) The financial impact upon the school corporation and whether any settlement will cause such school corporation to engage in deficit financing.

IC 20–7.5–1–13(b).

Blackford contends the IEERB fact-finder exceeds his statutory authority when he receives evidence irrelevant to Section 4 subjects over the objection of the school employer. Blackford posits this practice is unlawful because it requires school employers to "be subject to or enter into impasse procedures" over Section 5 items. IC 20–7.5–1–5. Further, Blackford asserts these unlawful practices cause injury to school employers because (1) the ultimate recommendation made by the fact-finder is colored by the evidence he heard on Section 5 items, and (2) school employers incur significant costs in being forced to prepare and present evidence on such items.

## DECISION

IEERB, its fact-finders and the impasse procedure are the creation of the legislature. Therefore, we look to those statutes for resolution of the instant dispute. It is unquestioned that an IEERB fact-finder has only that jurisdiction endowed by statute. Specifically, IC 20–7.5–1–13(b) provides, in relevant part, that "[t]he fact-finder shall make a recommendation as to the settlement of the disputes over which he has jurisdiction." That jurisdiction is limited to Section 4 subjects:

A school employer ... shall not be required to bargain collectively ... or be subject to or enter into impasse procedures on [Section 5 subjects].

IC 20–7.5–1–5(a).

[E]ither party may request ... fact-finding on the items which the parties are obligated to bargain collectively.

...

Nothing shall prevent either party from requesting ... fact-finding ... on items which must be bargained collectively under section 4 ... or prevent the parties acting together to request ... fact-finding on any items which must be bargained collectively under section 4....

IC 20–7.5–1–12.

Although the trial court granted IEERB's motion for summary judgment on grounds of lack of subject matter jurisdiction and mootness, we elect to affirm the trial court on yet another ground: the undisputed material facts establish that, as a matter of law, Blackford is not entitled to relief. Where there is no dispute or conflict concerning a fact which is dispositive of the action, summary judgment is appropriate.

Here, the undisputed material facts are: The IEERB admits that in practice IEERB appointed fact-finders hear evidence from persons, sometimes sworn and sometimes not, receive documents, hear arguments and sometimes receive briefs on items in dispute in order to determine if the items are ones over which the fact-finder has jurisdiction and, if so, to analyze it and make findings of fact and a recommendation as to settlement of items over which they have jurisdiction. Sometimes these items are permissive items of bargaining set forth in Section 5.

...

[T]he IEERB admits, as stated in paragraph 1 above, that it is the practice of fact-finders to hear from persons, accept documents, hear arguments and consider briefs concerning all items in dispute in order to, among other things, determine if they have jurisdiction of them which sometimes means they must examine proposals and subjects in light of 1972–73 agreements to see if they are "grandfathered" items of bargaining. The Act also requires the fact-finder to consider four factors, including "(1) past memoranda of agreements and/or contracts between the parties;" which contracts sometimes contain permissive items of bargaining contained in Section 5.

Record at 240.

[T]he IEERB admits, as stated in paragraphs 1 and 2 above, that it is the practice of some fact-finders in some cases to hear persons, sometimes sworn

and sometimes not, accept documents, hear arguments and consider briefs before deciding whether all, or part, of an item in dispute is within the jurisdiction of the fact-finder. Sometimes "objections" are ruled upon in the hearing and sometimes the fact-finder rules on jurisdiction in the report. Probably in almost all cases the fact-finder gives the party presenting the item as one in dispute a fair consideration before making a ruling. Such a fair consideration does include reading the item, hearing arguments as to why all or part of it is within the jurisdiction of the fact-finder, and considering arguments and briefs in support as well as arguments and briefs in support of the objection.

Record at 241.

The IEERB admits it allows fact-finders to accept evidence on all items for the purpose of determining jurisdiction and that sometimes the fact-finders take the objections under advisement and rule later in their report.

Record at 247.

The IEERB admits that it presently intends to continue to permit fact-finders to consider documents, statements, arguments and briefs on items presented in fact-finding for the purpose of determining jurisdiction of such items, and if jurisdiction is determined in the positive, to consider them in substance in order to make a substantive recommendation. The IEERB also presently intends to continue to encourage fact-finders to give due consideration to the positions of both parties before ruling and to permit the fact-finder to either rule from the bench or take objections under advisement and later, after consideration, rule upon jurisdiction in the report. Only a court order to the contrary would cause the IEERB to direct fact-finders to exclude items or documents, statements, arguments and briefs in support, solely upon the objection of one party without consideration of the relevant facts, documents, statements and briefs in support. It is also

the present intention of the IEERB to comply with the Open Door Law (I.C. 5–14–1.5–6.5(3)) by accepting all documents, statements, and arguments in the open for the purpose of permitting members of the public to observe and record them and to make post-hearing briefs and the report public as required by law. It is the IEERB's present intent to do so whether these matters relate to jurisdiction of certain items or the substance of certain items. The IEERB does not presently intend to predetermine such issues or direct fact-finders on these points by decisions made by the IEERB prior to a public hearing.

Record at 250.

Blackford's claim is based upon its contention that the undisputed practice of the IEERB fact-finders unlawfully subject it to fact-finding on non-mandatory subjects. For clarity, we reiterate that the practice in question is the fact-finder's receiving evidence over the employer's objection that the proffered evidence is outside the scope of Section 4 subjects.

 The crux of Blackford's argument is that the fact-finder, by receiving evidence on Section 5 subjects, is acting illegally because it is requiring Blackford to enter into fact-finding, and subjecting it to fact-finding, on Section 5 subjects, contrary to the express statutory prohibition. We disagree. The act of receiving any type of evidence is not prohibited by the Act.

Evidence is "the system of rules and standards by which the admission of proof at the trial of a lawsuit is regulated." McCormick, Evidence (3d ed. 1984) § 1. From their conception administrative agencies were not restricted by common law rules regulating the admission of evidence.[6] *Id.* at § 351. In fact, IC 4–21.5–3–25, addressing the conduct of any hearing held by an administrative law judge, provides that the proceedings shall be conducted "in an informal manner without recourse to the technical, common law rules of evidence applicable to civil actions in the courts." This sentiment is also expressed in the Act. IC 20–7.5–1–13(b) provides

---

6. In point of fact, the application of rules of evidence to administrative agencies would have minimal impact due to the laxity of those rules in non-jury proceedings.

"[t]he fact-finder shall make such investigation and hold such hearings as he deems necessary ... may use evidence furnished him by the parties, by the board, its staff, or any other state agency." Obviously, rules of evidence cannot apply to a proceeding where the fact-finder may obtain "evidence" from such varied sources.

Without evidentiary limitations, the fact-finder's practice pertaining to the receipt of evidence cannot be the basis for a cause of action. In particular, contrary to Blackford's claim, the practice cannot be illegal because it cannot be contrary to any principle of law. In view of the unrestricted discretion allowed the fact-finder by the express language of the Act, the prohibition upon which Blackford relies as the basis for its claim must prohibit conduct other than the receipt of evidence. Indeed it does. The "subject to" phrase prohibits the association from interjecting Section 5 subjects into the impasse procedures; the "required to enter into" phrase similarly prohibits the fact-finder from interjecting Section 5 subjects. In other words, the prohibition against being subject to, or being required to enter into, fact-finding on Section 5 subjects is a jurisdictional statement.

■ Of course, receiving evidence, the procedure here in question, is not an act outside the fact-finder's jurisdiction. Jurisdiction necessarily includes the power and authority to determine whether a subject is within the fact-finder's jurisdiction. The determination of jurisdiction is made by the fact-finder when he issues his findings and recommendations, and not by his actions in receiving evidence. The jurisdictional limitation is violated only if the fact-finder makes findings and/or recommendations on any subject other than those enumerated in Section 4. Should a fact-finder exceed his jurisdiction in that respect, his extra-jurisdictional findings and/or recommendations would be subject to correction by the vehicle of a declaratory judgment or a mandate action despite the fact the non-binding findings and recommendations are not themselves subject to judicial review.

While we appreciate Blackford's concerns, they are matters that must be addressed to the legislature, not the courts. As a matter of law, because the undisputed facts reveal the procedure which forms the basis of Blackford's claim does not entitle it to relief, the trial court properly entered judgment against Blackford. This is not to say, however, that Blackford is without recourse.

■ Because ultimate fact-findings are clearly limited to mandatory issues, a remedy is available under the Act when an association tries to subvert this process by attempting to raise non-mandatory issues during fact-finding. As previously stated, failure to bargain in good faith is an unfair labor practice. It is also an unfair labor practice for an employer or an association to "[f]ail or refuse to comply with any provision of this chapter." IC 20–7.5–1–7(a)(6) and (b)(4).

A school employer is clearly subject to, and required to enter into, impasse proceedings on Section 4 subjects only. Therefore, an association could breach both its duty to bargain in good faith and fail to comply with the Act if it attempts to introduce non-mandatory subjects into the fact-finding process over the objection of the employer.[7] In this context, IEERB would determine the legitimacy of the evidence presented to the fact-finder by the association. As the trial court recognized, "an IEERB determination that either Blackford or BCTA committed an unfair labor practice is subject to the Administrative Adjudication Act." Record at 321. In turn, that determination is subject to judicial review.

Judgment affirmed.

BUCHANAN and STATON, JJ., concur.

---

7. Impasse procedures are designed to expedite the bargaining process and not themselves become the source of further impasse. Accordingly, an unfair labor practice complaint based upon the claim a party offered evidence on non-mandatory subjects should not impede the parties obligation to continue to bargain in good faith on those items which are bargainable. A party who refuses to continue to bargain in good faith commits an unfair labor practice.